All right, our last case is Dorrbecker and Mr. Feldmeyer for the appellant. Good morning, Your Honors, and may it please the Court, my name is Robert Feldmeyer. I represent the petitioner appellant in this case, Alan Dorrbecker. This case deals with jurisdictional questions. Does Article 80 UCMJ criminalize a contingent mens rea? That's not a jurisdictional question. I don't understand that. Why isn't that just a question about what the element of a statute means? Well, because if Congress didn't criminalize contingent mens rea and put that element within the statute, it's not within the jurisdiction of a court-martial. Courts-martial are courts of limited jurisdiction who may try only those offenses criminalized by the UCMJ. So are you saying anytime someone is acquitted by a court-martial, so by definition they didn't do it, there also is no jurisdiction because they didn't do it? I don't understand. It seems to me you were just totally blurring the merits of a case with the jurisdictional question. The rule can't be jurisdiction attaches only if the crime is sort of properly charged against this defendant. No, Your Honor. The argument is one of subject matter jurisdiction. Are these elements included in the statute? And contingent mens rea is not included within the statute as Congress defined Article 80 because Article 80 simply references an attempt. And as the letter under Rule 30J that I filed last night... But appellant pled guilty to three of the attempted sexual abuse counts, correct? Your Honor, the military justice system has a unique... Okay, so did appellant plead guilty to three of the attempted... Yes, Your Honor. All right, so how is there... There was jurisdiction then for the guilty plea but not jurisdiction for the ultimate convictions after the court-martial? A guilty plea does not waive subject matter jurisdiction because subject matter jurisdiction can never be waived. If it's not an offense under the code, it's not within the jurisdiction of a court-martial. Congress did not make contingent mens rea a criminalized theory of offense under the UCMJ. If it had, as in Halloway, there would have been at least context and text within the statute that did so. The dissent in Doerbeker noted this problem that generally federal statutes are presumed to have their common law meeting when a common law crime is defined. And common law attempt does not include contingent mens rea. It must include an ultimate intent that cannot be overcome except by intervening... Just assuming hypothetically and without pre-deciding the issue, if I thought that this was not a jurisdictional argument but an argument about what the element of a statute means, then would this be reviewable by this court if this is a non-jurisdictional issue? It still would be, Your Honor. Okay. How come? First off, this court has not adopted the Tenth Circuit's Dodson test. And not all circuits do. For example, the D.C. Circuit will reach the merits of a case based upon a due process issue. We didn't get too deeply into where Dodson is and isn't adopted by the circuits because my client's position is that this is a jurisdictional matter. But this court has never adopted Dodson. Some of the district courts within the circuit have, but this court never has. Well, we've adopted the full and fair consideration standard in the Ward case. So is your argument that this issue, which, as you point out, produced kind of a split decision and a thorough airing on appeal, that it was not given full and fair consideration? Or do you think a different standard applies? Your Honor, the Supreme Court gave us the standard full and fair consideration. The consideration isn't fair if it applies incorrect legal principles. Okay. So the consideration is not fair if it is incorrect. So I just, again, I'm . . . Not if it reaches, if I might clarify, Your Honor. Sure. Not if it reaches a factual decision that the client, that the appellant doesn't like. But if there's a legal error. But if there is legal error. Okay. If you apply the, it's not a fair, to give a baseball analogy, it's not a fair umpiring if you have full . . . Your Honor, the Dodson test would tend to, would, if this court were to adopt Dodson, it wouldn't be quite so broad a statement. There would have to be substantial constitutional dimensions involved, no separate military consideration, et cetera. But the Supreme Court just said that in a habeas review, when the Supreme Court extended habeas to non-jurisdictional matters, the Supreme Court said that substantial constitutional measures, the constitutional issues are open to review. And that it just simply can't involve a mere reweighing of the facts. Here we're not asking for a mere reweighing of the facts. It's stipulated, was stipulated between the parties at court martial. My client had a contingent mens rea. He had not yet decided to commit the offenses with which . . . Contingent and contingent mens rea? That an attempt at common law, and up until this time under Article 80, required a definitive intent, specific intent, and that contingent mens rea isn't specific intent. When what is it? What is contingent mens rea? Contingent mens rea, that there are still decisions to be made about whether or not a person will engage in criminal misconduct. And that was stipulated between the parties here, Your Honor, that my client hadn't yet affirmatively decided to go ahead and commit criminal misconduct. There were still decisions to be made and discussions to be had. The Court of Appeals to Armed Forces recognized in United States v. Winkleman that specific intent . . . But what decisions were yet to be made and discussions to be had with the 14-year-old girl? 15-year-old, Your Honor. Okay, 15. The under 18-year-old girl. That there would be a discussion to determine whether or not both were ready and willing, and to quote the record of trial, it wouldn't just happen. That the government in the United States and the defense at trial . . . Well, she can't give consent based on her age, so . . . She can't give legal consent. She can give factual consent. Okay. The bottom line is that the government at court-martial stipulated that my client's determination was not set. He hadn't yet definitively decided to go ahead and engage in criminal misconduct. So contingent mens rea is what we have here. Contingent mens rea is what was litigated. I'm sorry. I know this is not really the gist of your argument, but I really don't understand the merits of the contingent mens rea thing. So your client had decided possibly there would not be a sort of forcible rape, and instead there might just be a legal rape with the consent of the underage girl. No, Your Honor. My client had decided there might not be any sexual conduct at all. He hadn't yet decided to engage in sexual conduct. Okay. And that was what was stipulated. But he was hoping to. He attempted to, right? He wanted the girl to give non-legal consent so that he could have sex with her. No, Your Honor. What was stipulated is that he might. He might desire that. And just to clarify the overlap with the status of forces argument, you think that's not an offense against the person? It's not an offense against the person because he wasn't communicating with her. He was communicating with an NCIS agent impersonating her. Who's not a person. She's not a person who can be victimized by a child offense because that person is an adult. What kind of offense is it? If it's not an offense against a person, is it an offense against property? It's an inchoate offense, Your Honor, and an inchoate offense. You think an inchoate offense can ever be against a person? An inchoate offense is within a ñ it could be against a person if you'd actually be communicating with the person, with the real person as opposed to an imposter. So when he showed up at her house, that was not an attempt to commit an offense against a person. It wasn't an offense committed against that person because she wasn't there. There was an NCIS agent there and had the offense. Well, I guess thankfully she wasn't there. True, Your Honor. Your Honor, to loop into the NATO status of forces agreement argument, I would concede that if this court finds that this matter is within the United States primary jurisdiction, that on that ground my client loses because if the matter is within the United States primary jurisdiction, then there's not an issue under the SOFA. And if this court believes that an offense, an inchoate offense, with the charged individual not present and not communicated with is still an offense against that person, then we lose on that ground. However, for the reasons I cite in my reply brief, in construing the term against the person, this court should look to the common law definitions of that term of art, which don't involve a person who's not present and don't include inchoate offenses. What do you think of the Ninth Circuit's decision in Brazil? In Brazil, Your Honor. Brazil, where they look at similar language and they note that nothing in the status of forces agreement gives or takes away a sovereign's jurisdiction. Well, two problems with it. First, I point this court to Ashby, in which this court is supposed to give heavy weight to the decision of Italian courts, and Italian courts have held that Italian courts cannot exercise secondary jurisdiction under the SOFA in the face of unwaived primary American jurisdiction. There's a difference between not exercising jurisdiction and not having jurisdiction, being stripped of jurisdiction. The second point I would like to make on those lines, Your Honor, is that the United States has no inherent jurisdiction in a foreign country. Rather, Eddie V. Robinson, another Supreme Court president dating back to Schooner McFadden, we acquire jurisdiction in a foreign country only consistent with the consent of that country. And here, under the NATO SOFA, consent is given subject to the rules of Article 7. You had a question, Your Honor? Oh, you're so nice. Yes, I did, actually. Why, even if I were to agree with everything you've said so far, I don't understand why we as a court have the power to enforce the terms of this treaty. Isn't there a lot of case law saying that, first of all, this discussion of which sovereign nation has sort of the priority right to exercise jurisdiction does not appear to create any individual rights? It appears to create sovereign rights. And even if it did, there's another provision in the treaty that says, like, the way to resolve any issues here is through diplomacy and not in court. So what are we doing here? There are two lines of precedent, Your Honor. The government relies on Patterson, Baird, and Laird, all of which deal with foreign defects. This court doesn't have authority to enforce the NATO SOFA as against a foreign sovereign. However, other lines of precedent, Green, Cody, Stokes, Youngsburg, Thomas, Chodosnard I disagree with that reading, certainly of Patterson. In Patterson, the court said, I can't remember which provision they were dealing with, but this provision actually does create a personal individual right, but sorry, it's not enforceable in court. It's not enforceable against South Korea. The Patterson appellate was seeking to have the right to not be tried in South Korean court because he alleged the SOFA double jeopardy. So Patterson stands to the proposition, unremarkable, that a United States court can't create a remedy in a South Korean court. I'd point the members of the court to the language in In Re Burt, quote, the Article 7 guarantee in the NATO SOFA treaty could only be raised by petitioner in the West German courts because that's where he was alleging that the jurisdictional defect occurred. Here we're alleging that the jurisdictional defect occurs in the United States. So we're taking the advice of the Burt court and raising the issue in an American court. As I was about to reference, Green, Cody, Stokes, Youngsburg, Thomas, and Chodosnard all deal with an American defect in jurisdiction. And of those cases, only Chodosnard, an unreported Air Force case, holds that a jurisdictional defect isn't really jurisdictional. Green holds that a service member may enforce the Article 7 double jeopardy provision because that creates a personal right in him. And if that personal right is created in him, he also has a personal right to have that double jeopardy right attached to his prosecution. Where do you find the personal right in this section about which sovereign nation gets to exercise jurisdiction first? Your Honor, I'd fully concede that there is no personal interest in the deliberations between the sovereigns. However, there was no deliberation here. Okay, so you think that this section 3, the priority right of the two sovereigns, creates a personal right. It doesn't just create rights in the sovereigns. The double jeopardy right is a personal right. Okay, let's put to one side the double jeopardy right because as far as I can tell, there's been no second prosecution in this case. If we're just talking about section 3, the part about priority jurisdiction, you agree that does not create personal rights. Your Honor, that creates personal rights because of double jeopardy because double jeopardy doesn't attach unless you comply with those provisions. Again, I'd point the court to Ashby in which had Italian courts called. So I'm sorry, I just really want yes or no. Section 3 does create personal rights. It creates personal rights because of the double jeopardy provision. So yes, it creates personal rights. So individuals can go into court to enforce the order in which sovereigns exercise their jurisdiction. I understand that you have a reason why that is so, but the answer is yes. You can't challenge the delivery. Is there any case anywhere saying that personal rights are created by section 3? Well, the list I just went through, Green, Cody, Stokes, Youngsburg, that because of the double jeopardy provision, that's a personal right. I see that my time has expired and I've gone negative. I thank the court, and we'll be back at rebuttal. Thank you. Mr. Holmes? May it please the court. My name is Lee Holmes. I'm an assistant United States attorney in the District of South Carolina, and I represent the commander. At trial and on appeal, the military justice system fully and fairly considered Doerbeker's claim that he did not have specific intent to have sex with a child. And although the United States did have the primary right to exercise jurisdiction over Doerbeker, even if it did not, Italy, not Doerbeker, would have a diplomatic remedy as its sole recourse. Can I ask you kind of a technical question that's probably not dispositive, but does the government agree that Italy has concurrent jurisdiction, in other words, that the U.S. doesn't have exclusive jurisdiction? Jurisdiction might. Italian is not great. It's actually zilch. But I was trying to look at these provisions that Mr. Doerbeker cites, and I couldn't find provisions where Italy prosecutes this conduct in relation to this age of a victim, but you probably know better than I do. I'm actually in the same boat as you, especially with the Italian. I looked at the provisions that Mr. Doerbeker cites, and I could not find a full official English translation, but using online translators, I don't think they relate to sex with underage individuals. Right. There seemed to be a statute that he didn't cite that's about maybe anyone of a different age, but it was under 14, I think. Right. Anyway, we're not going to decide on that basis, right? But I just wanted to see if you knew more than I did about what Italian law would prosecute. So those statutes are in Article 609 of the Codice Penale, and Doerbeker cites to Article 200 or so, and I don't think those are on point. So I do think it's an open question, but I don't think it's necessary to resolve this case. Thanks. So first I want to turn to whether the military courts fully and fairly considered whether Doerbeker had the requisite specific intent. The military justice system has robust trial rights and robust appellate rights. It would make no sense to prosecute, litigate cases in that system, simply to repeat it in a federal habeas court. That's why the Supreme Court in Burns v. Wilson announced the full and fair consideration test. Now, Doerbeker is attempting to get around that test by recasting his claim as whether Doerbeker had contingent mens rea. But that wasn't the issue before the military courts. The issue before the military courts was whether Doerbeker had the specific intent. And, of course, the military courts easily concluded that he did. There was a history of grooming through sexualized messages. These are Doerbeker's tales of the bazaar, including male-on-male rape, sadomasochism, prostitution, and obsessive masturbation. You have Doerbeker's journal regarding his lust for the child. You have him writing poes and poetry, including My Crime of Passion Cometh prior to his rendezvous. He stipulated that he knew she was 14. He stipulated that he was sexually attracted to her. And he stipulated that he thought of sex with her. He showed up to the arranged rendezvous with four condoms and four packages of lubricant. The military courts could easily determine under those facts that he had the specific intent required. Now, the question for this court is different. The question for this court is whether the military courts fully and fairly considered Doerbeker's claims. And there can be no serious case made that it did not. He presented the claim, the conditional mens rea claim, at the court-martial. He presented it at the Navy-Marine Corps Court of Appeals. He presented it to the Court of Appeals for the Armed Forces. And he presented it to the convening authority in a clemency petition. All responded, and the Navy-Marine Corps Court of Appeals issued a detailed published opinion. To quote Burns, What's your thought on Dodson and these extra factors? It seems like we don't need a four-factor test to know that the military courts fully and fairly considered this. We have their opinions considering it. But are those other factors even helpful? I agree. In this case, you certainly don't need to reach those other factors. It's a very clear-cut case here. I believe that the Burns v. Wilson test is fairly intuitive, straightforward, easy to apply, and the other factors don't really add much. Well, the Tenth Circuit has now said that all four of those have to be satisfied, right? It's not just factors to consider anymore. It's requirements. So they're adding on new layers from the Burns test. And, you know, Dodson was decided decades before Thomas v. U.S. Disciplinary Barracks, a Tenth Circuit case. And in that case, the Tenth Circuit focuses on Factor 4, which is the adequate consideration part of the Dodson test, the closest analogy to Burns in the four factors. And it says, while we continue to apply this four-part test, our recent cases have emphasized the fourth consideration as the most important. So I think that you see a march back towards Burns, and I think certainly, as I said before, in this case, Burns is all you need to resolve it. Oh, my gosh. I am so confused by the Dodson thing. So Dodson would be less favorable to court. In addition to it not having been fully and fairly considered, there are other things that the defendant would have to show in order to get court review, right? It's a constitutional question, and I can't even remember the other two. It's a legal question. You're right, Judge Hayes. Okay. Mike, what about your colleague's argument that, well, full and fair consideration doesn't apply to jurisdictional defects, and his claim is actually a jurisdictional claim, not a merits claim? His claim is about the merits, and saying it's jurisdictional does not make it jurisdictional. What if we assume it's jurisdictional? What if we agree with him on the jurisdictional argument? I think to get there, you would have to believe you'd essentially have to change the charging document because he was charged with attempt, a specific attempt crime, and what he's trying to do is he's trying to take some part of the record, which is this idea that he was only going to have sex with this child if she agreed to have sex with him, and he's trying to make that somehow binding.  And I also, my colleague on the other side talked a lot about the stipulation that the government made, and I think he's grossly overstating what the government stipulated to. If you look at JA-29, all the government stipulated to is on 2 December 2015, I was prepared if SM wanted to have sex. That's the stipulation to which he cites in his briefs. And, of course, he also stipulated that he was sexually attracted to the minor and that he thought of sex with her. So, in short, to quote Burns, the military courts have heard petitioners out on every significant allegation which they now urge. Accordingly, it is not the duty of the civil courts simply to repeat that process. If there are no other questions on that issue, I'll move on to the NATO Status of Forces Agreement. All right, go ahead. In this case, it's clear that the United States had the primary right to exercise jurisdiction. You have an American offender, Mr. Doerbeker. You have a victim that is a dependent of a naval investigator, an American, and you have it happening on a base home. This implicates entirely American interests. And while Doerbeker would have you focus on whether it's solely against the person, that phrase solely in the SOFA is not about the crime. It's about what states' interests are implicated. And so this is solely an American problem, and that's why the United States had the primary right to exercise jurisdiction. What is the better route for us as an Article III court here? Let's hypothetically assume that we agree with you. Is the better route for us to interpret the Status of Forces Agreement and declare that the U.S. has the primary right to exercise jurisdiction? Or is the better route for us to say, this is not a right that the defendant can come into court and try to enforce because the agreement itself has its own resolution methods laid out and they don't involve us? I think the better route is the second one, to say that this is not a matter for the judiciary to resolve and that the text of the SOFA makes that clear. It talks about the word concurrent jurisdiction, which Doerbeker confuses with exclusive until waived. It talks about not primary and secondary jurisdiction. It talks about the primary right to exercise jurisdiction. You can only exercise jurisdiction which you have. And, of course, it lays out precisely what the remedies are. Article 16. All differences between contracting parties are to be settled by negotiation. That does not allow courts to settle the dispute. And, of course, Doerbeker claims that we must get a waiver. The waiver provision says, in fact, that the countries shall only give, quote, sympathetic consideration to a request for waiver. That is not a requirement to get a waiver. And, of course, Judge Harris, you've already talked about some of the sister circuits which all agree with that view. Brazel v. Udenberg, that is the case that Doerbeker thinks he has where the American jurisdiction is secondary. And even in that case, he loses under the Ninth Circuit's opinion. They said failing to obtain a waiver does not nullify a signatory's authority to prosecute an offense. And in that SOFA, it doesn't say negotiation. There's a U.S.-Japan committee. But the court says that that is a diplomatic resolution only, not for judges. And so the United States had the primary right to exercise jurisdiction over Doerbeker. But even if it did not, which sovereign holds the primary right is not a matter for defendants to raise. What do we do with the double jeopardy argument in Section 8? I think the easiest way to resolve that is there's not one whiff in the record of Italy moving to prosecute him. His argument is that he's in jeopardy of double jeopardy. And that is just not a controversy that's before the court. Assuming I agree with you, this is the one part of your briefing that confused me a little bit because you cite all these cases saying that this SOFA, the D.C. Circuit was looking at this precise one, but this SOFA, SOFAs like it that have this diplomatic resolution provision. It follows from that that kind of whatever happens, your remedy is not in court. But if there actually had been sort of movement toward a second prosecution, you also seem to be saying, well, maybe if there's a Section 8 violation, that you could enforce in court? Perhaps. Why wouldn't that be given the same diplomatic resolution provision? I think the text supports the position you just laid out, that the only resolution mechanism is diplomatic. But Green has recognized that potentially double jeopardy is a personally enforceable right. What's Green again? What court decided Green? It's a military court. The genuine question, what do I do with precedent like that? What is it comparable to for my purposes? What if I think Green is wrong? Is it like a Ninth Circuit opinion? Is it binding because it's military and I should defer? No, I think you have to interpret the SOFA, which is a treaty ratified by the Senate, as you would interpret a statute sitting as a federal appellate court. So I think it's persuasive, but it is certainly not binding. And I feel like I'm missing one part of your question, if I haven't answered. Okay, great. Well, if there are no other questions, the government asks that you affirm the dismissal of Doerbeker's habeas petition. Thank you. Thank you for your argument. We'll hear again from Mr. Feldmeier, your rebuttal. Thank you, members of the court. I would just like to go back to the question of Article 80, and I'd like to go back to why fair and full consideration doesn't apply. Again, if Congress didn't make contingent mens rea a crime, it is not within a court's martial subject matter jurisdiction. So full and fair consideration is an additional test for non-jurisdictional questions, and non-crimes under the UCMJ cannot be made the subject of a UCMJ court martial prosecution. This isn't a case of defective pleading. But I think opposing counsel's argument was to accept your proposition we would have to rewrite the charging document, which charges him with attempt. The charging document charges him with a specific intent attempt because that's what Article 80 charges. I'm not saying that we're not alleging that the charging document was defective or left out an element. What we're saying is the element of mens rea, contingent mens rea, cannot be made the subject of a court martial prosecution. I'm sorry, he's charged. I really don't understand this argument. He's charged with specific intent, and you are saying he didn't have that. He didn't have that, and it was affirmed. Don't forget that Article 60 review before the Service Court of Criminal Appeals is also a jurisdictional step, and it was affirmed under Article 60 UCMJ on the basis of contingent mens rea. Nobody says he didn't have specific intent. He had instead contingent mens rea. They say he had specific intent. You disagree, but I don't understand how that is jurisdictional. If it's enough to make a claim jurisdictional that the defendant believes his conduct did not match up with the elements of the crime, well, that's all cases. What happens? If I may, Your Honor. The court swallows the rule. The Navy Marine Corps Court of Criminal Appeals said that contingent mens rea and specific intent are the same thing. So he had specific intent. He had specific intent as defined in an extra statutory manner by that court. I cannot find the principle that makes that something other than the standard merits argument we hear in this court every day in criminal cases. The conduct did not, there was no way to find specific intent in this case. You can't just point to the reasoning and say, well, they use this reasoning and that makes this a jurisdictional argument. They used reasoning that reaches outside the statute, and that's why it's a jurisdictional argument, Your Honor, that their legal reasoning reached outside the breadth of Article 80. Right. So their reasoning was incorrect. Not just incorrect, but involved a non-crime. So, Your Honor, moving back to wrap up, that's why we believe that this is not a matter of full and fair consideration test. Even if it were, the full and fair consideration test is not a check the block test. The military court's considered, therefore a civilian court can't. Rather, the consideration must be full and fair, and that must involve an analysis of whether or not the military court's applied correct legal standards. And here they did not, because even if this court accepts that this is not a jurisdictional matter, it still did not receive full and fair consideration because the legal principles involved were incorrect. Moving very briefly back to the NATO SOFA issue in the remaining minute and a half that I have, I just want to focus the court on the fact that the SOFA uses the word jurisdiction and right to exercise jurisdiction. If you don't have the right to exercise jurisdiction, your exercise is void, and that's indeed what Italian courts found in Ashby. If this court were to rule that the NATO SOFA or any SOFA is not in fact jurisdictional, for which there's no standing requirement to raise, it would expose service members to the risk of serial prosecution. If the Ashby court in Italy, if the Italian prosecution had followed the government's reasoning, Captain Ashby would be serving an Italian sentence and then an American sentence because double jeopardy would not attach against the United States, because the secondary exercise jurisdiction was not in accordance with the rules of the SOFA, and the Italian court would be perfectly free to prosecute under secondary right to exercise jurisdiction without getting a waiver. There's not a diplomatic remedy here, because the issue is not with a foreign government. The issue is with the United States, and the government has pointed to no case in which a court says to an individual, you have this right, you have the right not only to protect against double jeopardy, but to have that right attached, and your means to enforce it against the United States is through the State Department. That is not an argument which makes structural sense and not one which this court should follow. My time has expired. We'll end in two seconds. Thank you, members of the court, for your attention. All right, thank you. We'll come down and greet counsel and adjourn court until tomorrow morning.
judges: Stephanie D. Thacker, Pamela A. Harris, Allison J. Rushing